# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARY JESSENIA LOPEZ**     ) | |
| )  | |
| **Plaintiff,**     ) | |
| )  | |
| v.     ) | Civil Action No. WGC-15-4008 |
| )  | |
| **WASHINGTON METROPOLITAN**     ) | |
| **AREA TRANSIT AUTHORITY**     ) | |
| )  | |
| **Defendant.**     ) | |
| )  | |

## MEMORANDUM OPINION

Plaintiff Mary Jessenia Lopez ("Plaintiff" or "Ms. Lopez") brought this action against the Washington Metropolitan Area Transit Authority ("Defendant" or "WMATA") alleging negligence and seeking $30,000.00 in damages. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. This case was thereafter referred to the undersigned. *See* ECF No. 10. Pending before the court and ready for resolution is WMATA's Motion for Summary Judgment (ECF No. 15). Ms. Lopez filed an Opposition (ECF No. 18) and WMATA filed a Reply (ECF No. 19). No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2016).

## BACKGROUND[1]

On the morning of November 13, 2012, about 6:00 a.m., Ms. Lopez stood at a bus stop on Merrimac Drive in Hyattsville, Maryland, awaiting the arrival of the K6 Metro Bus. It was raining lightly or, as Ms. Lopez describes, "a little bit." She was the only individual at the bus stop. Ms. Lopez took the K6 Metro Bus routinely. The only item she carried was a lunch bag.

---

[1] In determining whether the moving party has shown there are no genuine issues of any material fact, this court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998).

1

She wore tennis shoes. During her July 19, 2016 deposition, in response to questions by WMATA's counsel, Ms. Lopez described the sequence of events.

> Q      Just from the time you got to the doors until the time you paid your fare, was there anything unusual about the way you boarded the bus that day?
>
> A      No. I paid my fare that day and once I paid [the bus driver] took off hard, bruskly, and I went backwards.
>
> Q      Where was your – when you boarded the bus were there any seats available?
>
> A      Yes, there were.
>
> Q      Where was your intended seat?
>
> A      I just got off – I just got on and I fell, I hadn't take[n] a seat yet. After I fell I took a seat.
>
> Q      How far back had you made it before you fell?
>
> A      How much? What do you mean?
>
> Q      How far behind the driver were you when you fell?
>
> A      For three steps in front.
>
> Q      Three steps behind the driver?
>
> A      Um-hum, three steps when I fell and I couldn't stop myself.
>
> Q      Were you holding on to anything as you walked back?
>
> A      No, because I hadn't yet reached the part where they – there is to hold on to.
>
> Q      Is it the same three steps behind the driver when the bus started moving?
>
> A      No, the bus started moving when I entered. I took three steps and then fell. She was going like this, fast.
>
> Q      Had you paid your fare when the bus started moving?

2

> A Yes, I just paid and all of a sudden she took off, there was no time.
>
> Q Had you taken any steps between the time you paid and the time when the bus started moving?
>
> A I paid, I paid. I started walking and she took off, she didn't give me time to walk.
>
> Q Was the floor of the bus wet?
>
> A Yes.
>
> Q Could you see that the floor of the bus was wet when you boarded the bus?
>
> A No, I didn't realize because when I got in all of a sudden I didn't realize if it was wet.
>
> Q But it was raining at the time you boarded the bus?
>
> A Yes.
>
> Q Can you tell me what you think caused you to fall?
>
> A I think it was that she drove too quickly, that she drove too bruskly and didn't give me time.
>
> Q Now, when you fell you fell backwards, correct?
>
> A Yes.
>
> Q And you hurt your wrist?
>
> A Yes. This went up and it broke this here.
>
> Q You broke your left wrist?
>
> A Yes.

ECF No. 18-3 at 5 (Lopez Dep. 14:6 – 16:21). Ms. Lopez testified a female passenger observed her fall; this passenger picked up Ms. Lopez's jacket, and reported the incident to the bus driver. Ms. Lopez does not know the name of the female passenger. According to Ms. Lopez, after this

female passenger reported what happened, the bus driver stopped the bus at the next bus stop. *Id.* at 5 (Lopez Dep. 17:4-9, 16-22).

Carolyn Stieff was operating the K6 Metro Bus on the morning of November 13, 2012. She does not recall many details concerning Ms. Lopez. She completed a WMATA incident report identifying 5:33 a.m. as the time of Ms. Lopez's incident. *See* ECF No. 18-4 at 4 (Stieff Dep. 11:9 – 13:4). On this report Ms. Stieff described noticing a female passenger holding her arm. She walked back to where the woman was seated and asked if she needed help. *Id.* at 4 (Stieff Dep. 12:15 – 13:1). Ms. Stieff called for an ambulance. *See* ECF No. 18-3 at 6 (Lopez Dep. 18:1-2).

During her July 19, 2016 deposition Ms. Stieff recalled it was raining that morning, and the floor of the bus was wet as passengers boarded the bus, tracking in rain. Before Ms. Lopez boarded the bus, Ms. Stieff does not recall any passenger having difficulty maintaining their balance on the bus. The following exchange occurred between Plaintiff's counsel and Ms. Stieff about the speed at which Ms. Stieff purportedly traveled when she pulled away from the bus stop after Ms. Lopez boarded the bus.

> Q        Now, as you sit here today, can you tell us how fast you pulled off from that bus stop that Ms. Lopez, from which Ms. Lopez embarked on, on the bus after she --
>
> A        I eased away from the stop. I don't pull off --
>
> Q        Okay
>
> A        -- per se. I ease away from the bus stop and then where that – that was it. I ease away, was no speed.
>
> Q        Okay. Now, so you say that there was, there was no speed, correct?
>
> A        No, there wasn't.

>    Q    And you say that you eased away?
>
>    A    Yes.
>
>    Q    How do you recall that today, how do you recall how you --
>
>    A    Because the bus stop where I stop and another stop are very close together, so, and traffic, so I know.

ECF No. 18-4 at 6 (Stieff Dep. 19:4 – 20:1).

Ms. Lopez's fall was captured by the Drive-Cam on WMATA's Metro Bus. According to WMATA this videographic evidence shows both of Ms. Lopez's feet were on the level surface of the bus and she had paid her fare before the bus moved. Further, WMATA claims the videographic evidence proves Ms. Stieff did not operate the bus in an abnormal or extraordinary manner as she drove the bus from the bus stop. ECF No. 15 at 5 ¶¶ 9-10. Contrarily, Ms. Lopez contends the videographic evidence creates a jury question, specifically, "whether or not the bus driver's operation of the bus was negligent under all of the circumstances, including, but not limited to, causing the bus to lurch forwards while the Plaintiff had not yet reached a place of safety in the bus where she could brace herself from a sudden, violent jerking motion." ECF No. 18-1 at 2 ¶ 11.

## JURISDICTION AND VENUE

This Court has original jurisdiction over this civil action based on federal question, 28 U.S.C. § 1331, specifically, pursuant to Section 81 of the WMATA Compact, Section 80 Stat. 1350, Pub. L. 89-774 (November 6, 1996), as outlined in Md. Code Ann., Transp. § 10-204(81), which states:

> The United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia and the District of Columbia, of all actions brought by or against the Authority and to enforce subpoenas issued under this title. Any such action

5

Case 8:15-cv-04008-WGC   Document 20   Filed 11/29/16   Page 6 of 15

> initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. 1446).

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). The court notes WMATA removed this case from state court to federal court on December 31, 2015. *See* ECF No. 1.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing no genuine issue as to any material fact exists. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

WMATA contends no genuine issues of material fact exist and therefore it is entitled to summary judgment. Specifically, WMATA argues Ms. Lopez bears the burden of proving negligence. She must demonstrate the movement was not normal, usual or incidental to the normal operation of a bus, but instead was abnormal or extraordinary. She cannot satisfy this burden through adjectival descriptions alone. She must demonstrate a "'definite, factual incident' which rendered the [movement] so 'abnormal and extraordinary that it can be legally found to have constituted negligence' in the operation of the [bus]." *Retkowsky v. Baltimore Transit Co.*, 222 Md. 433, 438, 160 A.2d 791, 793 (1960). Ms. Lopez fails to present such evidence and thus cannot establish WMATA's negligence.

Ms. Lopez claims she had not reached a place of safety *before* the bus driver pulled away from the bus stop suddenly and hard. According to Ms. Lopez, after paying the fare, she took three steps when the bus began to move suddenly, preventing Ms. Lopez from bracing herself and protecting herself from such movement by grabbing onto an available floor-to-ceiling pole.

7

The videographic evidence depicting Ms. Lopez's falling in a violent and unexpected manner supports Ms. Lopez's claim of negligent operation by the bus driver.

Additionally, Ms. Lopez argues the wet floor, in conjunction with the sudden and unexpected movement of the bus, caused her injury.[2] Further, as conceded by the Metro Bus driver, WMATA's standard operating procedure requires bus drivers to wait for a passenger to take a seat before moving the bus. *See* ECF No. 18-4 at 7 (Stieff Dep. 24:22 - 25:17). The videographic evidence clearly shows Ms. Lopez was not seated when Ms. Stieff pulled the bus away from the bus stop. Because there are at least two genuine issues of material fact, WMATA is not entitled to judgment as a matter of law.

In its Reply WMATA rejects Ms. Lopez's assertion that she was not in a place of safety on the bus when Ms. Stieff pulled the bus away from the bus stop. WMATA notes the Maryland Court of Appeals has defined "a place of safety."

> These cases are part of a long line of cases, too numerous to review here, which make it abundantly clear that once a passenger has planted both feet on a level portion of the floor of a vehicle sufficient in size to carry passengers in safety – be the place within or without the actual body of the car – he is in a place of safety and fairly on board. The duty is then his to see that he is not harmed by the normal movements of the car[.]

*Mass Transit Admin., v. Miller*, 271 Md. 256, 262, 315 A.2d 772, 775 (1974) (quoting *Miller v. Mass Transit Admin.*, 18 Md. App. 220, 225, 306 A.2d 261, 264 (1973)).

---

[2] This argument contradicts Ms. Lopez's deposition testimony.

> Q  Just one question. Do you believe that the wet floor on the bus also contributed to your fall?
>
>   Mr. CHANDONNET: Objection.
>
> A  I don't know. I think it was because of the driver. I've always gotten on buses all the time.

ECF No.18-3 at 6-7 (Lopez Dep. 21:22 – 22:6).

Second, Ms. Lopez relies on the testimony of Ms. Stieff who incorrectly cited as standard operating procedure the proposition that a bus driver must wait for a boarding passenger to be seated before moving the bus. That is not the law in Maryland. "[A]fter a passenger is on board, it is not incumbent upon a carrier to wait until the passenger has reached a seat before starting, or to afford assistance to a passenger, not laboring under some apparent infirmity or disability[.]" *Przyborowski v. Baltimore Transit Co.*, 191 Md. 63, 67, 59 A.2d 687, 689 (1947). Moreover as the Court of Appeals noted in *Retkowsky*, "that after a passenger is fairly aboard an operator may resume his ordinary duties as to the vehicle without further concern with the movements of passengers within the car; that it is the duty of passengers, once on aboard, to protect themselves against the normal motions of the vehicle incident to public transportation[.]" *Retkowsky*, 222 Md. at 439, 160 A.2d at 794.

Third, WMATA reasserts Ms. Lopez has not and cannot establish negligence. Although Ms. Lopez uses various adjectives to describe how hard and "bruskly" the bus moved, she fails to present any additional factual incident which would buttress her claim of negligence. Finally, regarding the wet floor of the bus purportedly contributing to Ms. Lopez's fall, WMATA contends it "enjoys immunity from its decisions to operate its buses during inclement weather as well as for its maintenance decisions with respect to the bus floors because such decisions are subject to economic and/or policy considerations that are protected by WMATA's governmental immunity[,]" ECF No. 19 at 3, as the Court of Appeals proclaimed in *Tinsley v. WMATA*, 429 Md. 217, 236-40, 55 A.3d 663, 674-77 (2012).

To establish a *prima facie* case of negligence under Maryland law, Ms. Lopez must prove "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the

loss or injury proximately resulted from the defendant's breach of the duty.'" *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (citations omitted). As a common carrier, WMATA owes the highest degree of care for the safety of its passengers. *See Smith v. Baltimore Transit Co.*, 211 Md. 529, 537, 128 A.2d 413, 417 (1957). "'It is not the utmost and highest, absolutely, but the highest which is consistent with the nature of [its] business, and there must be a due regard to its necessary requirements.'" *Id.* (quoting *Smith v. Blue Ridge Transp. Co.*, 172 Md. 42, 49, 191 A. 66, 69 (1937) (internal citation omitted)). WMATA however is not an insurer of the absolute safety of its passengers. *Carolina Coach Co. v. Bradley*, 17 Md. App. 51, 57, 299 A.2d 474, 478 (1973).

When a passenger such as Ms. Lopez suffers an injury while onboard a common carrier such as a WMATA Metro Bus, and the passenger subsequently sues the common carrier alleging negligence, "the pivotal question to determine is whether the act of the common carrier that led to the injury [in this case, the alleged hard and "brusk" driving], under the circumstances, was a negligent act under the heightened duty of care applicable to common carriers in [the] State [of Maryland]." *WMATA v. Seymour*, 387 Md. 217, 224, 874 A.2d 973, 977 (2005). Maryland law recognizes normal motions or movements incidental to public transportation. "[I]n cases involving injuries caused by the motions or movements of conveyances carrying passengers, recoveries have been permitted or denied, depending upon whether such motions or movements were unusual or extraordinary, or usual and incident to normal operation." *Retkowsky v. Baltimore Transit Co.*, 222 Md. at 440, 160 A.2d at 795.

Before addressing the issue of the motions or movements of the Metro Bus, Ms. Lopez alleges she was not in a place of safety before the bus moved. During her deposition Ms. Lopez testified that she paid her fare and started walking by taking three steps when the bus driver

pulled hard away from the bus stop and drove "bruskly." Ms. Lopez testified her fall was caused by the bus driver moving "too quickly, that she drove too bruskly and didn't give me time." ECF No. 15-1 at 4 (Lopez Dep. 16:13-14). It is undisputed Ms. Lopez was completely and fully onboard the bus *before* the alleged sudden, forceful movements. Regarding the assertion that Ms. Lopez was not at a place of safety when the bus moved suddenly and forcefully, Maryland law addresses this issue. "In Maryland, a bus driver is not required to wait until his passengers are seated before starting the bus in operation, unless the passenger labors under some apparent infirmity or disability." *Bradley*, 17 Md. App. at 55, 299 A.2d at 477. Ms. Lopez has not alleged she was either infirmed or disabled at the time of the incident. Since Ms. Lopez was within the interior of the bus when she fell, no evidence supports Ms. Lopez's assertion that she was not in a place of safety. Based on the above, the court finds there is not a genuine material factual dispute as to whether Ms. Lopez was fully onboard and at a place of safety when the Metro Bus allegedly moved suddenly and forcefully.

The court now turns its attention to the remaining issue, *i.e.,* whether the movement of the bus was unusual or extraordinary. The only evidence presented by Ms. Lopez about the bus operator's allegedly forceful driving is her own testimony. *See, e.g., Retkowsky*, 222 Md. at 436, 160 A.2d at 793; *Bradley*, 17 Md. App. at 54, 299 A.2d at 477. No corroborating witness has been presented and deposed. *See, e.g., Washington Ry. & Elec. Co. v. Anderson*, 168 Md. 224, 177 A. 282, 284 (1935) ("Her testimony was corroborated by the witness Shoemaker, who was emphatic in saying, that as the plaintiff was coming up into the car, it moved forward very suddenly with more force than usual."). No evidence has been presented that any other passenger on the bus fell and/or was injured besides Ms. Lopez as a result of the alleged sudden and

forceful movement of the bus. *See, e.g., Seymour*, 387 Md. at 222, 874 A.2d at 976 ("At least one other passenger on the bus that day was also injured because of this incident. . . .").

There is videographic evidence of the incident on the Metro Bus. Each side claims this videographic evidence supports her/its position. At the summary judgment stage, this court must view facts in the light most favorable to the nonmoving party, *i.e.*, Ms. Lopez, only if there is a genuine dispute as to material facts. Pursuant to *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), when there is videographic evidence which all parties agree has not been altered or tampered, the court should view that evidence to ensure the facts as alleged by the nonmoving are not inconsistent with the "facts" captured by an unaltered video.

This court has viewed the videographic evidence recorded by the Drive-Cam of WMATA's Metro Bus on the morning of November 13, 2012. *See* ECF No. 15, Ex. B. The Drive-Cam records activity on this bus from four views: (a) the front door, (b) the rear front, (c) the rear door and (d) the rear rear. The Drive-Cam captures Ms. Lopez from the front door view and the rear front view.

At 05:26:49 Ms. Lopez is seen boarding the bus via the front door camera. She is the second of two passengers boarding the bus at this stop. At 05:26:51 she pays her fare with her SmarTrip card. Thereafter the doors of the bus close. Ms. Lopez walks past the fare collection box (and the bus driver who is not visible) and moves to the well of the bus. Ms. Lopez disappears from the front door camera view at 05:26:53. A second later the Metro Bus begins to move.

From the rear front camera Ms. Lopez is seen at 05:26:53 as she stands almost parallel to the bus driver, past the fare collection box. Ms. Lopez is walking into the well of the Metro Bus at 05:26:54. A second later she slips and falls.

Both the front door camera view and the rear front camera view record Ms. Lopez being in a place of safety.

> [O]nce a passenger has planted both feet on a level portion of the floor of a vehicle sufficient in size to carry passengers in safety – be the place within or without the actual body of the car – he is in a place of safety and fairly on board. The duty is then his to see that he is not harmed by the normal movements of the car. Thus, where the passenger . . . has gotten both feet onto a level portion of the floor of the interior of the vehicle near the fare box, as in *Retkowsk[y]* . . . the issue of negligence cannot be submitted to the jury unless there is evidence to show that the injury was caused by an unusual, extraordinary, or abnormal start.

*Miller v. Mass Transit Admin.*, 18 Md. App. 220, 225, 306 A.2d 261, 264 (1973).

The passenger who entered the bus before Ms. Lopez sat in the very first seat on the right side, diagonally opposite and behind from where the bus driver sat. Ms. Lopez then entered the view of the rear front camera, appeared to take a few steps before slipping and falling. The view of the floor is not visible where Ms. Lopez slipped and fell. No other passenger was standing (all were seated) when Ms. Lopez fell.

Looking at the other passengers (specifically the movement of their bodies), there is minimal to no movement observable as the Metro Bus pulled from the bus stop. In other words, none of the other passengers are visibly moving in a defined manner such as being jerked by a sudden or abrupt movement of the bus when Ms. Lopez fell. In contrast, after she fell, most passengers leaned forward in response to the fall and/or possibly her verbal utterance (no sound with the video). Furthermore, as the Metro Bus slowed to a stop at the bus stop *before* Ms. Lopez boarded the bus, the bodies of the seated passengers leaned forward and then back (or sideways for passengers sitting perpendicular to facing the front of the bus), movements much more pronounced than at the time of Ms. Lopez's fall.

Similar to the plaintiff in *Retkowsky* Ms. Lopez fails to present some definite, factual incident caused by the alleged sudden, hard movement of the Metro Bus. "She made no attempt to show any unusual or extraordinary effect upon any other passenger, that there were any spontaneous exclamations of excitement by anyone . . . or that she was thrown or propelled any unusual distance when she fell." *Retkowsky*, 222 Md. at 438, 160 A.2d at 793-94.

The videographic evidence does not support Ms. Lopez's version of events. Under *Scott v. Harris* this court may view the facts in the light depicted by the Drive-Cam recording. 550 U.S. at 381. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 380 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

> "Proof of the negligence of a carrier by the characterization of the manner of stopping or starting a car or bus by strong adjectives or expletives will not generally suffice as descriptions of an act of negligence. This rule has been adopted generally by the courts as a matter of public policy, to avoid having liability based upon a mere expression of feeling on the part of the injured, which the experience of the courts has shown to be oftentimes the exaggeration of self-interest in anticipation of a judgment against a responsible defendant. The courts require that the description or characterization of the negligent cause of harm shall be accompanied by other proof."

*Retkowsky*, 222 Md. at 441, 160 A.2d at 795 (quoting 2 Harvey George Stevenson, *Negligence in the Atlantic States* 1198 (1954)).

Based on Maryland law, the court finds there is no genuine material factual dispute as to whether the movement of the bus was unusual or extraordinary. Moreover, *Tinsley v. WMATA* is controlling as to the issue of the wet floor of the bus and WMATA is immune from suit. 429 Md. at 224, 55 A.3d at 668.

**CONCLUSION**

For the foregoing reasons, the court finds there are no genuine issues as to any material fact and WMATA is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An Order will be entered separately.


  November 29, 2016                                  _____/s/_____
        Date                                                     WILLIAM CONNELLY
                                                         UNITED STATES MAGISTRATE JUDGE